14-2363 James Edward Kitchen v. Katherine Bauman Warden Arguments not to exceed 15 minutes facade Mr. Magidson to the appellant If you have reserved time, I'm sure you all told the clerk that but please tell me how much you reserved Good morning. I appease the court, Mark Magidson on behalf of the petitioner, appellant James Edward Kitchen I would like to reserve three minutes for rebuttal Well, essentially, there is only one issue on this appeal and that is whether the district court erred in not allowing equitable tolling due to Mr. Kitchen's mental condition Well, isn't there a second issue of whether it's used as discretion in not allowing evidentiary hearing? Correct So there's two issues Right. That's right. And I was going to get to that You said the sole issue. I think that's how you started out Thank you for correcting that To put it bluntly, Mr. Kitchen is delusional His grand delusions have prevented him from and interfered with his ability to perfect his appeal or his petition for Ritter Page's corpse It is Mr. Kitchen's core beliefs, beliefs within his very soul, that he owns the state of Michigan He inherited the state Okay. Are you testifying or are you reciting things from the record? This is from the record Okay. You might want to say where you're getting the facts from Okay. And it's part of the record and I'm looking at the, for instance, the psychiatric discharge summary from the forensic center This is prior to trial? This was prior to the trial Okay. Prior to the time he was found to be competent to stand trial He was found to be, after 14 and a half months in the forensic center, he was found to be competent to stand trial But, as noted by Patricia Campbell, MD, the MD psychiatrist who treated him for 14 and a half months Her discharge proviso was, he will need to continue on the medications he was discharged on Specifically, he will need to stay on Clonapin, 0.5 milligrams, Respiradol, 2 milligrams, each taken at 9 p.m. She adds, as one of her specific orders, quote, in order to maintain competency, he will need to stay on Respiradol and Clonapin Okay. So now he's discharged in July of, end of July 2005 And he's now pronounced fit for trial He's returned to the trial court in Sheboygan, Michigan And his trial counsel again meets with him And his delusions have not gone away These will never go away But the medication is there to make him at least focus, to calm him down to the point where he's not talking about, you work for me I'm not subject to your jurisdiction He's at least calm to the point where he doesn't have those types of outbursts I'm just curious, what evidence is there of incompetency once he's with the DMC? Okay. So, while he's in Sheboygan jail during the entire time, they follow the advice and recommendations of the forensic center And then he's found guilty He's sentenced on November 22, 2005 He's at the Department of Corrections on December 6, 2005, less than two and a half, three weeks later He's evaluated by a psychologist there And they decide he's perfectly fine They decide at that point that he has no psychiatric problem That he has no need for medication And that he's suddenly cured after years of grand delusions And these aren't just ordinary delusions where you might think, well, I'm better than you are or something like that These delusions interfere with the very core of his existence So, and I gave this some thought And I'm thinking, why would they conclude that? Because this is a man who is not harmful to himself or others He's not there causing the disturbance If he thinks he's Santa Claus or Jesus Christ or whoever he wants, let him think that, as long as he's harmless So the warden's interests are different than the court's interests The warden's interest is stability and calmness in the institution Mr. Magnuson, let me try to focus where we're going here Sure We've got one set of psychiatrists that say he's competent Although they say he needs to have drugs And another set afterwards that say he's competent and he doesn't need drugs Most of our cases where we address this Suggest that there's something more than what most of us would call strange pleadings that are subsequently filed That's necessary to show incompetence There are lots of people that have beliefs about the law Particularly tax protesters and the like that file bizarre things It doesn't mean they're not competent, it just means they're wrong So what Judge Strand is asking is What do you have from the time that he got to the Department of Corrections That shows that he is incompetent aside from filing some bizarre pleadings? And the reason that I'm asking you that so we can stay focused Is it just seems highly unlikely that on this record This court could find that he was incompetent And thereby the judge erred in not equitably tolling the statute of limitations So it at least seems, at least to me That we should be focusing on the abuse of discretion question On whether he should have had a hearing In order for you to produce evidence that seems to be lacking in the record right now Aside from bizarre pleadings See where I'm going? I see exactly where you're going So I had a two-fold argument I suggested, one, that there was sufficient evidence And I respect your view that there isn't But I said at the very least there's sufficient here that he met a threshold There's a threshold here that it should Let's take a second look Because what we have here So if you want us to take a second look Then explain to us what it is that you think you're going to be able to develop In an evidentiary hearing Because you tried to get the records And you quibble about You don't think the jail and the state were very cooperative with you But by the same token the state says there aren't any records He didn't receive any psychiatric care He didn't ask for any medicine He didn't act out He didn't do any of the things that normally occur If somebody really has a mental problem while they're in prison He wasn't hospitalized He wasn't put in the psych unit So what are you going to show us during an evidentiary hearing? What I would expect to show is Number one, I would expect to have Mr. Kitchen Perhaps even testify If that would be allowed Because I think what was insightful And I cited a dialogue in my brief That he had with the trial judge Just prior to the trial The eve of trial His trial attorney made a motion as it went Still incompetent Apparently Mr. Kitchen had filed a grievance against him In addition The trial court said to Mr. Kitchen Who filed the grievance against your trial attorney? And Mr. Kitchen says Mark Esler, he's the United States Constitutional Arranger And then the defense counsel adds I think these delusions do cause problems The petitioner They're not delusions Us Kitchens are federal We're not state We are federal Our whole family is federal through old documents The trial court Well Mr. Kitchen Do you understand the nature of the charges against you? I do CSC first degree I'm also federal This court has no jurisdiction over me Well that may be your interpretation of the law So as I said We've all read this stuff I understand So the fact that he has some bizarre beliefs Does not generally speaking In and of itself Establish that he's incompetent Well And of course The lower court found he wasn't That he was competent And he was tried He was convicted So what else you got? Or what else do you think you can develop In connection with the evidentiary hearing That you think you should have gotten? Well I've I have since had an opportunity to review this With a psychologist And they are At least one that I've spoken with Replying that this person Who's suffering from grand delusions Of a paranoid type Would in fact This would arise to the level of Interfering with his ability To timely file So you want to bring in a psychiatrist And you think you've found one that will testify That he's incompetent You didn't bring that evidence to the district court No You said it's not in the record It's not in the record But it was something Because I was asked And I was I didn't bring it up Because it's not in the record Okay If you have to establish To the district court A threshold standard sufficient To get an evidentiary hearing I mean it's late now isn't it to But I believe that the record In my view Is sufficient already Because I think that What we have here Is a gentleman who is And I expect that you're saying that The court gets a lot of crazy files But if you read these documents And if you sit down with the gentleman He's got documents That are signed by a judge Excuse me President Buchanan From the 1850s Purporting to have Given him the state of Michigan This is a person who is How did he come this way? Mr. Franks Let me ask you this question Are there cases that allow you To do discovery In preparation for an evidentiary hearing? I believe that yeah I think that is part of Is part of the Habeas case Discoveries Depositions are allowed There's a broad range of latitude That the district courts Can do to allow this We're at the very threshold And frankly I believe that Had we been given a little more time To at least address And expand the record We would have been able to Satisfactorily address those issues The problem you have Is that the broader The leeway I forgot what word you just used The district court has The harder it is to show That they've abused that discretion The more they have The harder it is to abuse it Well I agree But at least At the very least To not allow us The opportunity When we have all this here Because what we have here Is 14 months In the forensic center Where he's incompetent With the proviso By the very treating doctor And I think that's the strongest Evidence I have Did he do anything After he was in the custody Of the Michigan Department of Corrections That would cooperate The fact that he's incompetent For purposes of understanding What he needs to do To file a habeas petition Aside from What may be some bizarre pleadings He filed all those bizarre pleadings When he was told By a magistrate This is the way you do it I got that But I mean did he act out Did he seek medicine Did he not get along With his fellow inmates And what did he do None of that He is this If you talk to him He seems as rational As anybody in this courtroom Until you peel back that onion skin And realize This man is insane Mr. Anderson If we assume That he does have Some type of mental illness Does that automatically Make him incompetent And accessible to the whole Doesn't automatically But it certainly When he's operating On a parallel universe And his universe is I'm the prince of this state I'm my own sovereign It certainly interferes With his ability to comport With the timelines And the time limits And I would say In this particular case Where do you come up Because that's the second problem Here at Warren Eckerton You need not only Establish that he's Mentally incompetent That's the first problem The second problem Is that you must establish That because of his Mental incompetency He was unable to file The timely habeas petition I don't see any evidence Or any allegations at all Pertaining to the second problem I see all your arguments Pertaining to incompetency Actually, the incompetency Probably ten years Or nine years Before the petition Was filed in 2014 But tell me what evidence You submitted to the district court Regarding the second problem Which is that his incompetency Prohibited him from filing The timely habeas petition He did all his pleadings That he thought Went to the point Where he thinks He is the king or the prince Being wrongly held This doesn't recognize The jurisdiction of this court Or any court over him And that's what prevented him From doing it And that's in the records Because all the documents That he filed And he filed numerous filings He spent all his time In the library Doing these things Well Except for the Okay, somehow He got you And you've been Representing him since 2011 Well And to That his incompetency Prohibited him From filing a habeas petition And I assume You could have filed A habeas petition in 2011 Which would be more timely Than three years later But I mean Just because he's incompetent Doesn't mean He couldn't have filed it Well When your incompetence Is to such a degree I'm just Reminded of And I hate to get off track I'm just playing time The The There was a movie Beautiful Mind Where a brilliant mathematician Played by Russell Crowe Of Mr. Nash It was a true story Talbot Princeton He believed that He was approached by the FBI To crack the Soviet code That was encrypted In newspapers and magazines And it shows him Doing all these things But I think what The movie demonstrated Was how man Of utmost intelligence And rationality Could go totally off track Into a parallel universe And totally not be part Of this reality And I think this is what There really isn't A second problem In this test That mental incompetency Is enough To No The mental incompetency Which prevented him From Filing Title Okay So your only argument On that is because It is so severe That that's That prevented him From getting From his family Getting an attorney And filing it earlier Or I mean His family His family got you His family got him In 2011 You waited You waited Three years to file it I know you went To state court For this Relief of judgment Which I'm not sure Is the same issues That you want The habeas case I'm not sure That that's Even a Properly filed Relief of judgment And appeal Which is another Whole issue here Another question But Why couldn't The family Have Have the Habeas filed Earlier than 2014 He got His whole Belief system From his family He's This was a view From him From him When he was a child Just as You might have been Raised With certain World Values Or Family history He was told From the day He was four years old That you are The prince We own Michigan And his family Has the same Belief systems And his extended Family are Constitutional rangers All right Thank you You have your Rebuttal Thank you Mr. Schimpas  Grounders May it please the court Scott Schimpas Assisting Attorney General On behalf of Gordon and Catherine Bauman I think In this case Timelines are Especially important And The true Nature Of Mr. Kitchens Delusions As counsel Quoted Are especially Important Even The Psychiatrist Who evaluated Him at Discharging him From the Center for Mental Illness From A simple Minority Political Belief The fact is Mr. Kitchens Essentially falls Into this Realm of Sovereign Citizens He believes He is a Sovereign Citizen Whether It's Delusional Or borderline Mental illness Judging You point out That's not The same As mental Incompetence Mental Incompetence In the Legal realm Means he has to Understand the Proceedings against Him and At least in The trial Setting Or really Even here He has to Have the Ability to Aid his Counsel In his Defense But he Hasn't shown That here He does In fact have To show Two things First that He was Legally Incompetent And second That that Mental Incompetence Caused him To not He doesn't Have a guardian Ad litem Or anything He is Directing the Defense Counsel Himself right Now To the Best of My knowledge So he Can make Decisions To his Attorney And he's Been doing That since 2011 So we I guess we Have to find That he's Competent as To that Data anyway Yes I Completely agree Judge Yes And As far as These other Filings go In the Western District Counsel is Correct he was Finding numerous Documents and This was within The limitations Period I think It's especially Important to Note what The limitations Period here Is it's May 7th Or excuse me May 9th Of 2007 To May 9th Of 2008 That is the Year window we're Looking at First of all The documents Disseminated from The Michigan Department of Corrections from 2005 That's outside Of that window So really Those documents Aren't even relevant Here but to The extent that They are They said he's Mentally stable They said he Understands what's Going on It's kind of hard For you to say They're not relevant When you're relying On documents At the same time Period I agree Yes I guess my Argument is more Or less in the Alternative they Are not relevant Because they are Outside the time Period but to The extent that They are relevant I think they Actually help us More than they Help Mr. Kitchen It does seem to Me that Mr. Kitchen's got Two potential Things going For him One there's a Psychiatrist that Says he is Incompetent unless He has given The medication And accompanying That there's some Suggestion that when He went off his Meds he had Problems and so They had to put Him back on His meds and it Does seem strange I would say that He's incompetent Without medication One moment and Then MDOC two Or three weeks Later says Everything's all Better and he Doesn't need his Medicine So that seems To do a lot to Me and then Second of all Arguably the Manifestations of Not being on The medication Is that he's Filing a lot of Pleadings that Do seem to Fit in the Bizarre category So the question At least in my Mind is are Those two things Enough you take Him off the Meds and then You see what Happened I don't believe That is enough And this is why Counsel and Mr. Kitchen here are Saying he's Incompetent They're saying Because he was Not on his Meds he must Have been Incompetent But that's not Enough under AUGA that is Not a sufficiently Specific allegation For evidentiary Hearing and Certainly not enough To show mental Incompetence here That may What's the threshold Showing that one Needs to make to Get an evidentiary Hearing on this Issue totally And the reason I say that is Because as I Read Hannah And said And talked about You have to take If you accept The factual Allegations as True With that Showing that He's mentally Incompetent Is that the Threshold that You have to Accept his Factual allegations As true Under AUGA Yes that's Absolutely true But I think AUGA is Instructive here Because I think Are there other Circuses that Follow that same Standard That I am Not aware of Unfortunately I'm just not Sure Okay let me Just tell you What kind of Raises questions In my mind Sure And that is That it's Pretty clear That before His trial In the CSC Charges That he has Mental issues He's incompetent He's in Forensic center They need 14 months To get him Competent With medication And then after The trial His lawyer Says let's Look at him Again But the Judge goes Ahead and tries The case And then he Goes to the DOC And what's A person To do To try To show That he's Incompetent After that When they Are in the DOC I mean I guess Mr. Matjeson's Comment Is kind Of Interesting Um Does a Person have To be Wild and Crazy Before the DOC Intervenes Um What does He have To do To get The attention To say He needs Medication Um And then Well let Me Let me Stop There Oh That's That's Like All right Um I think They have A few Different avenues Available They can Send Kites You know They can Send notes Um To officers To um The site Board What have You And I Think But if He thinks He's Competent And he's Not Which is Basically What Mr. Backson is Arguing Then you Wouldn't Be Sending Kites You Wouldn't Be Asking For Medicine That you Say You Don't Need Because You're Not Delusional Right Right And that Comes To my Second Point That I Think It Speaks More To His Interactions With Other People That Might Speak More To This Issue Is That I Have To Imagine In The Future  Mr. Backson Alerted Someone In The Prison Even If It Was Another Inmate That Something Might Be Wrong Someone Should Maybe Evaluate Mr. Kitchen But That Never Happened I Have To      Backson Alerted Someone In Something Might Be Wrong I Have To Backson  Someone In The Prison  If It Was